I must respectfully dissent from the majority decision affirming the Deputy Commissioner on the issues of the relatedness of plaintiff's neck and psychological conditions to her July 28, 1999 compensable arm and shoulder injury. Plaintiff has failed to prove by the greater weight of the medical evidence that her July 28, 1999 injury by accident resulted in a neck injury or psychological problems. Any medical evidence supporting the relatedness of plaintiff's neck and psychological problems is based on a temporal relationship and an incomplete or inaccurate history.
At the time of her injury, plaintiff had pre-existing neck problems dating back to 1985 when she suffered a severe neck injury resulting in a cervical discectomy and a two-level fusion. Thereafter, plaintiff had periodic neck and shoulder pain as well as nervousness and panic attacks. Furthermore, after beginning work for defendant-employer in May 1998 but before the July 28, 1999 injury, plaintiff was concerned about neck difficulties and obtained a doctor's excuse from mopping.
Significantly, plaintiff's complaints immediately following her July 28, 1999 injury were localized to her left shoulder. In fact, plaintiff did not have symptoms of neck pain and radiculopathy until May 2000, almost a year after her injury. Although plaintiff contended to Dr. Neave and at the hearing that her neck pain was present directly following the accident, this is contradicted by the early medical records as well as by Dr. Warburton and Dr. Barefoot. The medical treatment and testing performed in close proximity to plaintiff's injury reveal no neck problems related to the injury. Specifically, the September 1999 bone scan indicates normal results with some degenerative changes and the September 1999 MRI indicates normal results with the only abnormality being a tear of the rotator cuff which was surgically repaired. Dr. Warburton who was plaintiff's treating physician at the time saw no signs of cervical impingement syndrome or a herniated disc during 1999 or the first several months of 2000. As a result of plaintiff's continued subjective complaints, Dr. Warburton referred her to a pain program where plaintiff again reported that she was not struck in the neck and that initially she had only left shoulder pain. Dr. Barefoot, the pain program medical director, concurred with Dr. Warburton that plaintiff was in no need of treatment or evaluation of her. Dr. Goeke, Director of Psychological Services at the pain clinic, diagnosed plaintiff with pre-existing personality disorder and depression. When plaintiff was released from the pain clinic on April 14, 2000 Drs. Barefoot and Goeke agreed that plaintiff could return to work for defendant-employer as a greeter. On April 17, 2000, Dr. Warburton also released plaintiff to return to restricted work, which would include cashier or greeter positions.
These physicians, in particular Dr. Warburton, were in the best position to determine causation and course of treatment because they treated plaintiff contemporaneously with her initial complaints and followed her during the period prior to May 2000 when she first complained of neck pain and radiation. There are many discrepancies which are best resolved in favor of the information plaintiff initially gave to her physicians and their early documentation. The opinion of Dr. Neave upon which plaintiff relies should be given lesser weight as her opinions were not formed during the crucial time period following the injury and are based on an inaccurate history and were made without the benefit of reviewing all of the medical records, especially the early ones indicating no neck pain.
It is insufficient to relate plaintiff's neck and psychological conditions to her injury by accident merely because these symptoms appeared after the injury. Accordingly, plaintiff has failed to meet her burden of proof. Based on the foregoing, I respectfully dissent and would reverse the Deputy Commissioner.
 S/_______________ DIANNE C. SELLERS COMMISSIONER